Mr. Justice James
delivered the opinion of the Court:
This is an action for money paid by the plaintiff for the firm of Hume, Cleary & Company at its request, in which he claims $3,000, with interest, at the rate of 7 per cent, per annum from the 22d day of June, 1881.
The evidence, which was given only on the part of the plaintiff, is set forth in the bill of exceptions. It is to the effect that on and before the 22d day of June, 1881, and until his death on the 23d of October, 1881, Thomas L. Hume was the senior partner of the firm of Hume, Cleary & Company, which consisted of said Thomas and of Frank Hume and James K. Cleary; that on or about the said 22d day of June, the said Thomas made his promissory note for the sum of $3,000, payable to the order of the plaintiff sixty days after date, with interest at the rate of 7 per cent, per annum, and thereupon, at his request, the plaintiff indorsed the same as an accommodation indorser; that said note was then indorsed by Frank Hume as second indorser, and lastly, by said firm, the firm name being written by said Thomas L. Hume; that when the latter asked plaintiff to so indorse, he said the note would also be- *519 indorsed by Frank Hume; that nothing was said of any other indorsement, and plaintiff had no knowledge.whether the note was to be used for partnership purposes or not ;■ that it was discounted for said firm by the National Metropolitan Bank of Washington, bbing presented for discount by said Thomas, and the proceeds thereof, to wit, $3,000,-were placed to the credit of the firm in said bank, and were drawn out on the firm’s check, the firm name being written by said Thomas L. Hume.
The cashier of the bank testified that it was the custom of the bank not to pay the proceeds of discounts over the counter, but to place them to the credit of the last indorser, to be drawn out by his check.
The evidence further tended to show that the note was discounted in good faith, in the usual course of business and before maturity; that on its maturity, and at the request of said Thomas, it was in good faith renewed by the bank, the parties thereon being the same, and their names appearing on the note in the same form and in the same manner as on the original note, the plaintiff being, as before, an accommodation indorser; that at maturity this renewal note was presented by the bank for payment, but was dishonored and notice of non-payment was duly given to the indorsers. Thereupon suit was brought in this court by the bank against the plaintiff and the present defendants, and judgment was recovered against the plaintiff for the amount of the note and interest. Pleas were filed by the defendants Frank Hume and James K. Cleary, and the case as against them has not come to trial. Afterwards, on or about the 13th of February, 1882, the plaintiff was compelled to pay the full amount of that judgment, namely, $3,124.90, and the bank entered the judgment satisfied.
Upon this evidence — none having been introduced on the part of the defendants — the court stated that “ it not appearing from the proof that the plaintiff had indorsed said notes at the request of said Thomas L. Hume for the. *520 benefit of said Hume, Cleary & Company, the jury should find a verdict for the defendants. A bill of exception was taken, and the case is now here bn a motion for a new trial.
This instruction appears to assume that the plaintiff’s position as surety was determined once for all by the particular contract which was made at the time of the indorsement, and that, inasmuch as that contract had no reference to the firm of Hume, Cleary & Company, he must be considered to have paid the judgment as surety for Thomas L. Hume.
We think that such was undoubtedly the scope of the original contract, and that any right depending upon that contract would be thus limited. But the question is, ■ whether the right asserted in this action does depend upon that contract; in other words, whether a right of action against the firm may not have accrued to the plaintiff by reason of the transactions of the firm subsequent to that contract. It is claimed on the part of the plaintiff that, although the form of the note indicated at the outset an individual transaction of Thomas L. Hume, the firm became indebted to the bank as indorsers, and as receivers in that capacitj'- of the proceeds of the discount, and that they were, under the particular circumstances, indorsees without right to look to the plaintiff as prior indorser in case they should have to take up the note. It is therefore insisted that this is merely a case in which one person has been compelled to pay a debt which it was the legal duty of another to have paid. It is upon the fact of this payment, and not upon any original undertaking had at the time of the plaintiff’s accommodation indorsement, that this action is based.
We think this contention is correct. In the first place it appears by this record — and we cannot look beyond it — ■ that Thomas L. Hume had the usual power of a partner to bind his firm, and that by his indorsement in the firm name the bank acquired the note in the usual course of business, before maturity, for value, and in good faith; in a word, *521 that the bank acquired all the rights of an innocent holder of negotiable paper.
This transaction then constituted, in the first place, a debt of the firm of Hume, Cleary & Company to the bank. In the next place this debt was one in respect of which the plaintiff, though an indorser to the firm, was under no obligation to it by reason of beihg such prior indorser. In any action by it on that indorsement Thomas L. Hume must have been one of the plaintiffs; and inasmuch as he would, as maker of the same note, be directly liable -to the plaintiff as its payee, he could not maintain such an action; and whatever would bar his action would bar also that of his co-plaintiffs.
This principle has been applied even where one partner is estopped to sue on the instrument by a collateral agreement or understanding not appearing on the paper. For example, Story says (Partnership, Sec. 237): “If a partnership becomes possessed of a negotiable security which has been procured by one partner upon the understanding that he will punctually provide for the payment thereof at its maturity the partnership cannot sue upon such security, because the same partner must be made one of the plaintiffs, and as it is clear in such a case that he could not maintain any suit in his own name thereon, the same objections will avail against him as a co-plaintiff. Thus, where one partner in a banking house drew a bill in his own name upon a third person, who accepted the same upon the condition that the partner would provide funds for the payment thereof at its maturity; and the bill was after-wards indorsed to the partnership, and a suit was thereupon brought by all the partners against the acceptor, it was held that the action was not maintainable, because all the partners were bound by the acts of that partner, and as between him and the acceptor there was no pretense of any right to recover. Sparrow vs. Chisman, 9 B. & C., 241.”
In short it appears by the authorities to be a principle *522 of partnership that when title is acquired by co-partnership through the medium of one of the partners, it is acquired subject to all the conditions and disabilities with which he received it; and this whether he first received it in his individual or in his partnership capacity. And it is immaterial whether these disabilities are known to the partnership at the time of acquiring the security. The liabilities and disabilities of the co-partnership are determined by its act of putting it in the power of its co-partner to do what he has done. In the case at bar it was by this authority that Thomas L. Hume was enabled to treat the note in question as the property of the firm, and by the same authority that he was enabled to endorse it to the bank, and to receive the proceeds of the discount in the name of the firm. The result of this principle of mercantile law was that the firm contracted a debt to the bank under circumstances which deprived it of the right to look to the plaintiff for re-imbursement. When the plaintiff ivas compelled by a third party to pay what, so far as the' defendants were concerned, was only their debt, he must be considered to have paid it by a compulsion to which they were parties, and therefore for their benefit and relief and at their request.
It seems to have been supposed by very high authorities to be necessary to make out a relation of surety and principal, in order to give an action for indemnity to the party paying the debt. In Hunt vs. Amidown, 4 Hill, 345, 348, 349, Chancellor Wolworth said: “It is an equitable principle of very general application, that where one person is in the situation of a mere surety for another, whether he become so by actual contract or by operation of law, if he is compelled to pay the debt which the other in equhy and justice ought to have paid he is entitled to relief against the other, who was, in fact, the principal debtor. And when courts of law, a long time since, fell in love with a part of .the jurisdiction of the court of chancery and substituted the equitable remedy of an action of assumpsit *523 upon the common counts for the more dilatory and expensive proceeding by a bill in equity in certain cases,, they permitted the person thus standing in the situation of surety, who had been compelled to pay money for the principal debtor, to recover it back again from the person who ought to have paid it, in this equitable action of assumpsit as for money paid, laid out and expended for his use and benefit.” He then cited the case of Exall vs. Partridge, 8 Term R., 308, as a case of this description, and said: “ The carriage of the plaintiff, Exall, being left upon leasehold premises, was distrained for rent reserved in a lease to the defendants, which rent they had covenanted with the landlord to pay; and the plaintiff had been compelled to pay the rent to prevent his carriage from being sold. In that case it will be perceived there was no privity of contract between the plaintiff and the defendants nor any request that he should pay the rent for them. But by the-seizure of his carriage upon the demised premises, he was-placed in the situation of a surety for the payment of the-rent which they, as the real debtors, were in equity and justice bound to pay; and he was allowed to recover the amount thus paid in the equitable action of assumpsit for money paid for their use.”
It is to be observed that neither of the four judges who-delivered opinions in Exall vs. Partridge hinted that the plaintiff’s right of action stood upon an implied relation of surety and principal; and it would seem clear that, in order to a recovery of indemnity in this action,.it is wholly unnecessary to suppose such a relation. An action by a surety to recover money paid for his principal is merely an application of a broader principle, which was stated in Powell vs. Ferrand, 6 B. & C., 429. There Lord Tenterden said: “The plaintiff is entitled to recover in assumpsitupon the general principle that one man, who is compelled to pay money which another is bound to pay, is entitled to-be re-imbursed by the latter.” It is upon this general principle that the right of a surety is based.
*524 Examples of the application of this principle will be found conveniently assembled in the opinion of Justice Ellsworth, in the case of Bailey vs. Bussing, 28 Conn., 461.
Being of the opinion that, upon the facts shown in this record, an action for money paid for the use of the defendants accrued to the plaintiff by reason of his payment of the judgment of the bank, and that it was unnecessary to show that his original indorsement was made for their accommodation we have to reverse the judgment of the Circuit Court and grant a new trial.